IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MASTERMIND INVOLVEMENT MARKETING, INC., <br><br>  Plaintiff, <br><br> v. <br><br> THE ART INSTITUTE OF ATLANTA, LLC, et al. <br><br>  Defendants. | CASE NO.: 1:19-CV-00839-TWT |

## THE AI DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants The Art Institute of Atlanta, LLC, The Art Institute of Austin, Inc., The Art Institute of Dallas, Inc., The Art Institute of Houston, LLC, The Art Institute of San Antonio, Inc., The Art Institute of Tampa, Inc., The Art Institute of Virginia Beach, LLC, and Miami International University of Art & Design, Inc. (collectively, the "AI Defendants"), by and through undersigned counsel, submit this Answer to the Complaint filed by Plaintiff MasterMind Involvement Marketing, Inc. ("MasterMind"), and further assert Counterclaims against MasterMind.

### PARTIES[1]

1. The AI Defendants lack knowledge or information concerning the truth of the allegations in Paragraph 1 of the Complaint and therefore deny those allegations.

2. The AI Defendants admit upon information and belief the allegations in Paragraph 2 of the Complaint.

---

[1] The AI Defendants include the headers in MasterMind's Complaint for reference purposes only. Unless expressly admitted, the AI Defendants deny each and every allegation in the Complaint.

3. The AI Defendants admit upon information and belief the allegations in Paragraph 3 of the Complaint.

4. The AI Defendants admit upon information and belief the allegations in Paragraph 4 of the Complaint.

5. The AI Defendants admit upon information and belief the allegations in Paragraph 5 of the Complaint.

6. The AI Defendants admit upon information and belief the allegations in Paragraph 6 of the Complaint.

7. The AI Defendants admit upon information and belief the allegations in Paragraph 7 of the Complaint.

8. The AI Defendants admit upon information and belief the allegations in Paragraph 8 of the Complaint.

9. The AI Defendants admit upon information and belief the allegations in Paragraph 9 of the Complaint.

## **JURISDICTION AND VENUE**

10. The AI Defendants admit upon information and belief the allegations in Paragraph 10 of the Complaint.

11. The allegations in Paragraph 11 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, the AI Defendants lack knowledge or information concerning the truth of the allegations in Paragraph 11 and therefore deny those allegations.

## FACTUAL BACKGROUND

12. The AI Defendants deny the allegations in Paragraph 12 of the Complaint. The AI Defendants refer to the Master Services Agreement discussed in Paragraph 12 for additional information concerning the allegations in Paragraph 12.

13. The AI Defendants deny the allegations in Paragraph 13 of the Complaint. The AI Defendants refer to the Master Services Agreement discussed in Paragraph 13 for additional information concerning the allegations in Paragraph 13.

14. The AI Defendants deny the allegations in Paragraph 14 of the Complaint.

15. The AI Defendants deny the allegations in Paragraph 15 of the Complaint.

16. The AI Defendants deny the allegations in Paragraph 16 of the Complaint.

## COUNT I

## BREACH OF THE AGREEMENT

17. The AI Defendants expressly incorporate their responses to the allegations in Paragraphs 1-16 of the Complaint as if fully stated herein.

18. The AI Defendants deny the allegations in Paragraph 18 of the Complaint.

## COUNT II

## UNJUST ENRICHMENT

19. The AI Defendants expressly incorporate their responses to the allegations in Paragraphs 1-18 of the Complaint as if fully stated herein.

20. The AI Defendants deny the allegations in Paragraph 20 of the Complaint.

22. The AI Defendants deny the allegations in Paragraph 22 of the Complaint.[2]

## COUNT III

---

[2] MasterMind's Complaint does not contain paragraph number 21.

## QUANTUM MERUIT

23. The AI Defendants expressly incorporate their responses to the allegations in Paragraphs 1-22 of the Complaint as if fully stated herein.

24. The AI Defendants deny the allegations in Paragraph 24 of the Complaint.

25. The AI Defendants deny the allegations in Paragraph 25 of the Complaint.

## COUNT IV

## ATTORNEYS' FEES

23. The AI Defendants expressly incorporate their responses to the allegations in Paragraphs 1-25 of the Complaint as if fully stated herein.

24. The AI Defendants deny the allegations in Paragraph 24 of the Complaint.[3]

## AFFIRMATIVE AND OTHER DEFENSES

1. MasterMind's claims are barred under the doctrine of waiver.

2. MasterMind's claims are barred under the doctrine of equitable estoppel.

3. MasterMind's claims are barred under the doctrine of repudiation.

4. MasterMind's claims are barred under the doctrine of ratification.

5. MasterMind's claims are barred under the doctrine of accord and satisfaction.

6. MasterMind's claims are barred due to modification of the parties' contract.

7. MasterMind's claims are barred under the doctrine of novation.

8. MasterMind's claims are barred under the doctrine of fraudulent inducement.

9. MasterMind's claims are barred under the doctrines of laches, statute of limitations, acquiescence, consent, release, res judicata, and/or collateral estoppel.

---

[3] MasterMind's Complaint mistakenly numbers the two paragraphs in Count IV.

4

10. MasterMind's claims are barred because the AI Defendants acted in good faith at all times.

11. MasterMind's claims are barred by the doctrine under unclean hands.

12. MasterMind's claims are barred because it has not suffered any damages.

13. MasterMind's claims are barred because the AI Defendants are not the proximate cause of its alleged damages.

14. MasterMind's claims are barred because the AI Defendants are not the parties legally responsible for purportedly causing MasterMind's alleged damages.

15. MasterMind's claims are barred because it failed to make reasonable efforts to mitigate any damages.

16. MasterMind lacks standing and/or the capacity to bring the claims, and seek the alleged damages, in the Complaint.

17. MasterMind's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

18. MasterMind's claims are barred by the doctrines of impossibility of performance and/or impracticability.

19. MasterMind's claims are barred by the statute of frauds.

20. MasterMind's claims are barred by the doctrine of mutual or unilateral mistake.

21. MasterMind's claims are barred by the doctrine of contributory negligence.

22. MasterMind's claims are barred due to its prior material breach of the contract.

23. MasterMind's claims are barred because it failed to perform a condition precedent to performance under the contract.

24. MasterMind's claims are barred under the express terms of the contract at issue.

25. The AI Defendants are entitled to a setoff for all sums of money recovered from any collateral sources, or recovered by or on behalf of MasterMind by way of any settlement, judgment, or any other mechanism, regardless of whether such settlement, judgment, or other mechanism involved a party or non-party to this action.

26. The AI Defendants reserve the right to plead spoliation of evidence, if appropriate.

27. The AI Defendants reserve the right to amend their Answer and add any additional affirmative defenses which become applicable after the substantial completion of discovery.

## **THE AI DEFENDANTS' COUNTERCLAIMS AGAINST MASTERMIND**

Pursuant to Federal Rule of Civil Procedure 13 and 28 U.S.C. § 1367(a), the AI Defendants assert counterclaims against MasterMind as set forth below.

### **JURISDICTION**

1. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

2. This Court has supplemental jurisdiction over the AI Defendants' counterclaims because they are "so related to the claims" within the court's original jurisdiction. 28 U.S.C. § 1367(a). *See Zurn Industries, Inc. v. Acton Const. Co., Inc.*, 847 F.2d 234, 237 (5th Cir. 1988) (holding that the Court has jurisdiction over a compulsory counterclaim even in the absence of independent jurisdictional grounds); *Stewart v. Orthopedic Innovators Inc.*, 2009 WL 10667815, at *2 (S.D. Fla. June 11, 2009) (noting that "[i]f a counterclaim is compulsory under the meaning of [FRCP] 13, it automatically gives rise to supplemental jurisdiction pursuant to 28 U.S.C. § 1367").

### **BACKGROUND**

3. The AI Defendants bring these counterclaims because MasterMind has unlawfully refused to transfer control of the passwords and/or administrative rights to the AI Defendants' various social media accounts, including those on social media platforms such as Facebook, Instagram, Twitter, Snapchat, and Pinterest, among others, back to the AI Defendants.

**DCEH Acquires the AI Defendants**

4. The genesis of the instant dispute between the AI Defendants and MasterMind traces back to 2017 when Dream Center Education Holdings, LLC ("DCEH") acquired the assets of Education Management Corporation ("EDMC").

5. One of the assets DCEH acquired from EDMC was The Arts Institute International, LLC ("AI International").

6. AI International is the parent company of the AI Defendants in this case.

7. DCEH, through its acquisition of AI International, became owner of the rights to the social media accounts for all the Art Institute schools, including the AI Defendants.

**MasterMind Contracts to Provide Social Media Services for the AI Defendants**

8. On February 28, 2018, DCEH and MasterMind entered into a Master Services Agreement (the "Agreement"). Pursuant to the Agreement, MasterMind was to provide social media marketing and advertising services for all DCEH-owned schools, including for the AI Defendants.

9. The Agreement made clear that MasterMind was not acquiring any ownership rights to the various social media accounts but instead was merely providing services as a vendor.

10. In order to effectuate the Agreement, DCEH, AI International, and/or the AI Defendants provided MasterMind with the passwords and administrator rights to the AI Defendants' account profiles on various social media platforms, including Facebook, Instagram, Twitter, Snapchat, and Pinterest, among others.

11. In connection with MasterMind's review of the social media profiles, MasterMind recommended that DCEH begin storing the social media accounts' passwords in a more secure location. MasterMind specifically recommended that DCEH allow MasterMind to store the accounts' passwords on its own software program known as "Last Pass." Based on MasterMind's purported expertise in such matters, DCEH agreed.

**DCEH Sells the AI Defendants to EPF and AI International Contracts with Studio**

12. On January 7, 2019, DCEH sold certain of its assets to Education Principle Foundation ("EPF"). Among the assets DCEH sold to EPF were each of the AI Defendants.

13. As part of that larger transaction, DCEH also sold the ownership rights for the AI Defendants' social media accounts to AI International. AI International, at this same time, entered into a services agreement with Studio Enterprises Manager, LLC ("Studio") under which Studio would, among other things, control and manage the AI Defendants' various social media accounts.

14. Following the January 7 transaction, DCEH entered into receivership.

**MasterMind Refuses to Transfer Control of Social Media Accounts to the AI Defendants**

15. Shortly after learning of the January 7 transaction and DCEH's entry into receivership, MasterMind withheld from the AI Defendants, despite repeated demands, the passwords and/or administrator rights for the AI Defendants' social media accounts that MasterMind was servicing under the Agreement.

16. MasterMind also began changing the passwords and/or administrative rights to the AI Defendants' social media accounts in an effort to prevent the AI Defendants from successfully accessing the accounts.

17. The social media accounts for the AI Defendants which MasterMind refused to transfer control over included those on Facebook, Instagram, Twitter, Snapchat, and Pinterest, among others.

18. MasterMind unlawfully retained possession to these passwords and/or administrative rights for the AI Defendants' accounts despite repeated demands from the AI Defendants.

19. MasterMind unlawfully stored the passwords to the AI Defendants' social media accounts in MasterMind's Last Pass account, the same software program that MasterMind initially recommended to DCEH as a location where the passwords could be safely secured.

20. In addition to the passwords themselves, the social media accounts owned by the AI Defendants and/or AI International are of significant economic value. The AI Defendants collectively have over 30 social media accounts on multiple different social media platforms through which they market and advertise their services to current and prospective students on a daily, if not hourly, basis. By denying the AI Defendants access to their accounts, MasterMind is preventing the AI Defendants from performing the marketing and advertising outreach activities critical to attracting new customers – many of whom are young adults and active on social media – and "staying relevant" in a social media-driven competitive market.  If MasterMind is allowed to continue to hold their accounts hostage and refuse to transfer control, the AI Defendants will continue to suffer a disruption of business and customer relations.

## CAUSES OF ACTION

### Count I – Preliminary Injunction

21. The AI Defendants expressly incorporate their allegations in Paragraphs 1 through 20 as if fully stated herein.

22. The AI Defendants seek an injunction requiring that MasterMind immediately provide the AI Defendants with the passwords, administrative rights, and any other information necessary to enable the AI Defendants to login and access their social media accounts, including but not limited to the AI Defendants' accounts with Facebook, Instagram, Twitter, Snapchat, and Pinterest, among other accounts.

23. The AI Defendants have suffered, and will continue to suffer irreparable injury if the injunction is not granted due to MasterMind's refusal to transfer control of their social media accounts' passwords and/or administrative rights. The AI Defendants are unable to perform the day-to-day marketing and advertising of their educational services that enables them to reach and attract new customers. The AI Defendants depend heavily on their online presence to advertise their schools, which requires the ability to continuously update their online social media profiles and react to online trends. Every day that the AI Defendants cannot promote their educational services is another day that the AI Defendants are prevented from effectively competing in the market for those services. The inability to do so unquestionably has a negative effect on the AI Defendants' reputation, and the magnitude of that effect is difficult, if not impossible, to quantify in monetary terms.

24. The above-described injury outweighs the harm any injunction may cause MasterMind. There is literally no injury that MasterMind would suffer if the injunction is issued and MasterMind is ordered to provide the AI Defendants with access to their social media accounts. MasterMind's present ability to access the AI Defendants' social media profiles provides it with no pecuniary benefit whatsoever.

25. Moreover, MasterMind's remedy, if any, for alleged non-payment for services it allegedly performed under the Agreement is to assert a legal action within the confines of the law, not the self-help method of holding the AI Defendants' social media accounts hostage in a blatant attempt to extort payment.

26. The AI Defendants are likely to succeed on the merits of each of their claims against MasterMind, as to be discussed more fully in the AI Defendants' forthcoming request for an injunction.

27. Finally, issuing an injunction would not be adverse to the public interest.

## Count II – Georgia Trade Secret Act

28. The AI Defendants expressly incorporate their allegations in Paragraphs 1 through 27 as if fully stated herein.

29. The AI Defendants' passwords and/or administrative rights and the associated social media accounts, including the AI Defendants accounts with Facebook, Instagram, Twitter, Snapchat, and Pinterest, among others, are "trade secrets."

30. The passwords and/or administrative rights and the associated social media accounts are information which derive economic value because the information posted on the account profiles, and the methods and techniques of posting such information, enables the AI Defendants to attract new customers.

31. The AI Defendants took efforts – albeit to a degree unintended – to maintain secrecy of the passwords and/or administrative rights and the associated social media accounts.

32. MasterMind misappropriated the passwords and/or administrative rights and the social media accounts by refusing to provide the AI Defendants with the passwords and/or administrative rights and by changing the passwords and/or administrative rights to the accounts.

33. MasterMind has used the passwords and/or administrative rights and/or social media profiles of the AI Defendants without either the express consent or the implied consent of the AI Defendants.

34. MasterMind knew at the time of first use, and continues to know, that such passwords and/or administrative rights and/or social media accounts were initially acquired by MasterMind under circumstances giving rise to a duty to maintain their secrecy or limit their use.

35. The AI Defendants have been damaged as a direct and proximate result of MasterMind's misappropriation and continue to be damaged because the AI Defendants have not been able to advertise and market their services on social media to attract prospective customers.

### Count III – Conversion

36. The AI Defendants expressly incorporate their allegations in Paragraphs 1 through 35 as if fully stated herein.

37. The AI Defendants and/or AI International are the rightful owners of the social media accounts and have at all times had the right to possession of those accounts' passwords and administrative rights.

38. The passwords and social media accounts constitute intellectual property owned by the AI Defendants and/or AI International.

39. The AI Defendants currently do not have possession of the passwords and administrative rights to the social media accounts because MasterMind has withheld them from the AI Defendants, despite repeated demands.

40. MasterMind has unlawfully converted the passwords and/or administrative rights and social media accounts by changing the passwords and/or administrative rights to the accounts. MasterMind further has unlawfully converted the passwords and administrative rights by storing them in MasterMind's Last Pass account.

41. The AI Defendants have been damaged as a direct and proximate result of MasterMind's conversion, and continue to be damaged because the AI Defendants have not been able to advertise and market their services on social media to attract prospective customers.

### Count IV – Breach of Fiduciary Duty

42. The AI Defendants expressly incorporate their allegations in Paragraphs 1 through 41 as if fully stated herein.

43. MasterMind knowingly assumed a fiduciary duty to the AI Defendants when the AI Defendants relinquished control of their social media accounts and passwords to MasterMind and MasterMind exercised total and complete control over those accounts.

44. MasterMind breached that duty, and continues to breach that duty, by refusing to give the AI Defendants access to the passwords and/or administrative rights to the social media accounts.

45. The AI Defendants have been damaged as a direct and proximate result of MasterMind's breach, and continue to be damaged because the AI Defendants have not been able to advertise and market their services on social media to attract prospective customers.

### Count V – Negligence

46. The AI Defendants expressly incorporate their allegations in Paragraphs 1 through 45 as if fully stated herein.

47. MasterMind had a duty to maintain the passwords and/or administrative rights to the AI Defendants' social media accounts that it acquired from the AI Defendants.

48. MasterMind further had a duty to use such passwords and/or administrative rights to the AI Defendants social media accounts in a way that would not cause harm to the AI Defendants.

49. MasterMind breached that duty because it negligently used the passwords and/or administrative rights to the social media accounts in a way that has caused harm to the AI Defendants.

50. The AI Defendants have been damaged as a direct and proximate result of MasterMind's breach of its duty, and continue to be damaged because the AI Defendants have not been able to advertise and market their services on social media to attract prospective customers.

**Count VI – The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C)**

51. The AI Defendants expressly incorporate their allegations in Paragraphs 1 through 50 as if fully stated herein.

52. MasterMind intentionally accessed a protected computer without authorization and/or exceeded authorized access from the AI Defendants and used that computer to obtain information it was not authorized to obtain, including the AI Defendants' passwords and/or administrative rights to their social media accounts.

53. MasterMind accessed such a protected computer without authorization and/or exceeded authorized access to log into the social media accounts with the then-current passwords and/or administrative rights and then change those passwords and/or administrative rights to the accounts.

54. The economic loss in revenue to the AI Defendants as a result of the interruption of its social media marketing and advertising efforts is difficult to quantify, but has exceeded more than $750,000.00 since MasterMind began denying access to the AI Defendants in or around January 2019.

**WHEREFORE, THE AI DEFENDANTS PRAY**:

 (a) That the Court enter judgment against MasterMind on each count of MasterMind's Complaint;

 (b) That the Court enter judgment in favor of the AI Defendants on each of their counterclaims;

    (c) That the Court issue a preliminary injunction ordering MasterMind to immediately provide the AI Defendants with the passwords, administrative rights, and any other information necessary to enable the AI Defendants to access their social media accounts, including but not limited to the AI Defendants' accounts with Facebook, Instagram, Twitter, Snapchat, and Pinterest, among other accounts;

    (d) That the Court award damages for the AI Defendants and against MasterMind in an amount to be determined at trial;

    (e) That the Court award the AI Defendants' their reasonable attorneys' fees;

    (f) That the Court award such other further relief as is just and proper.

Respectfully submitted this the 28th day of March 2019.

        */s/ Alexander B. Feinberg*
        Alexander B. Feinberg (Georgia Bar No. 956505)
        **MAYNARD, COOPER & GALE, P.C.**
        1901 Sixth Avenue North
        2400 Regions/Harbert Plaza
        Birmingham, Alabama 35203-2602
        (205) 254-1000
        (205) 254-1999 (fax)
        afeinberg@maynardcooper.com

        *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which served notice of this electronic filing upon the following:

    Matthew A. Schuh
    Two Midtown Plaza, Suite 1350
    1349 West Peachtree Street
    Atlanta, Georgia 30309
    (404) 277-8421

    *Attorney for Plaintiff*

    */s/ Alexander B. Feinberg*
    OF COUNSEL