## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MASTERMIND INVOLVEMENT MARKETING, INC., | ) ) ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| v. | ) | FILE NO. 1:19-CV-00839-TWT |
| | ) | |
| THE ART INSTITUTE OF ATLANTA, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff MasterMind, Inc. ("MasterMind") submits this Brief in Opposition to the Defendants' Motion for Preliminary Injunction. Based upon the argument and authority herein, and upon the entire record before the Court, MasterMind respectfully urges the Court to deny the motion.

*Introduction*

In this commercial collection action, the Defendants seek a preliminary injunction, contending that they are entitled to certain rights in Instagram and Twitter accounts created or materially improved by MasterMind, without any obligation to pay the contractually agreed price for those rights and improvements. Ignoring the fundamental inequity of such a result, the Defendants base this

contention on their unsupported assertion that they acquired these rights, but not the associated obligation to pay for them, in a mind-numbingly complex performance of legal legerdemain that resulted in a still-pending federal court receivership, following the still-pending consolidated Chapter 7 bankruptcy filings by some fifty-five (55) predecessor or affiliated entities. For the reasons articulated more fully below, MasterMind respectfully urges the Court to deny the Defendants' motion for a preliminary injunction.

## _Factual Background_

Plaintiff MasterMind is a small business in Atlanta that provides marketing-related services to customers within and outside Georgia. Those services include producing and managing on-line content disseminated through "social media platforms" such as Instagram and Twitter.

On or about February 28, 2018, MasterMind and non-party Dream Center Education Holdings, LLC ("DCEH") executed and delivered to one another a document titled "Master Services Agreement" ("MSA"). A complete and accurate copy of that MSA is attached as Exhibit "A" to the Declaration of Rebecca Adams [Doc #30-1], which the Defendants filed in support of their motion. In general, the MSA evidenced the terms governing MasterMind's anticipated services under any

separate Statements of Work ("SOW") to be executed and delivered by those parties.[1]

Thereafter, MasterMind and DCEH executed and delivered to one another several SOWs.  Among them was a SOW dated March 1, 2018 headed "Social Strategy" (Exhibit E to the Declaration of Andrew Golubock filed with this brief (hereafter the "Golubock Decl.") and a SOW dated August 15, 2018 headed "Statement of Work – FY '19 Social Agency of Record".  (Golubock Decl., Exh. F).  Although the contracting parties were MasterMind and DCEH, the document states that the services were provided for the additional benefit of "the aforementioned DCEH brands", i.e., The Art Institutes, South University, Argosy University, and Western State College of Law. Golubock Decl., Exh. F, page 1. The contract (comprised of the MSA and SOWs) provided that MasterMind would furnish specified services in exchange for $720,000 plus expenses, to be paid in installments of $60,000 per month. Id. at page 3.

MasterMind began performing services under this contract in mid-July 2018, and continued to do so until on or about January 17, 2019, despite the fact that

---

[1] "Master Services Agreements" and separate, subsidiary "Statements of Work" are widely used in the internet and computer technology industries to evidence the terms under which a service provider such as Mastermind provides services to a customer such as DCEH.

neither DCEH nor the Defendants were making the agreed installment payments. In February 2019, MasterMind was compelled to commence this action to obtain a judgment against the Defendants for $360,000, which is the amount unpaid for the services it provided for the benefit of the Defendants under the SOW.

Although somewhat complicated and tortuous, the following facts are relevant to show that, as argued below, the Defendants have failed to provide any competent evidence that they own any rights in the Instagram and Twitter accounts that are the subject of this motion, and that there is a significant and genuine question as to exactly who or what currently owns those rights.

In February 2018, when MasterMind and DCEH executed the MSA, DCEH was an Arizona nonprofit limited liability holding company that owned, directly or indirectly, and operated private schools identified in the parties' contracts as The Art Institutes, South University, Argosy University, and Western State College of Law including the Defendants. (Golubock Decl., Exh. F, page 1, paragraph headed "Background").

MasterMind's relationship with these "brands" began in 2016 when South University engaged MasterMind to provide services. Upon information and belief, at that time South University was owned by Education Management, LLC ("EDMC") or one of its affiliates. That relationship apparently was satisfactory to

both parties, and in October 2017 EDMC itself engaged MasterMind to provide services under an MSA and SOWs with that entity.

At the same time, in October 2017, EDMC, itself or through its owned or controlled affiliates, sold a substantial portion of its assets or controlled entities, representing the purportedly viable schools it controlled.  That sale was made to one or more entities owned or controlled by the "Dream Center Foundation". Among those transferees was Dream Center Education Holdings, LLC ("DCEH"). In late June 2018, EDMC and some 55 of its affiliates filed petitions under Chapter 7 of the Bankruptcy Code in the U. S. Bankruptcy Court in Delaware.  Those cases have been consolidated administratively under *In re The Art Institute of Philadelphia,* Chapter 7 Case No. 18-11535 (LSS), and were designated as a "mega" bankruptcy case.  The cases are open and ongoing.  (See Declaration of James C. Morton, Esq. filed with this brief (hereinafter the "Morton Decl."), Exhibits 1 and 2).

In early January 2019, while those bankruptcy cases were pending, substantially all of the assets or equity interests in the DCEH-owned schools, including the Defendants, were sold in a very complex transaction to Studio Enterprise Manager, LLC ("Studio") and a foundation named "Education Principle Foundation" ("EPF").  (Morton Decl., Exh. 3, page 6) (First Report of Receiver)

Within days, on January 18, 2019, DCEH and some 25 of its owned or controlled affiliates were placed into receivership by the U. S. District Court for the Northern District of Ohio. *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Civil Action File No. 1:19-CV-00145-DAP.  (Morton Decl., Exh. 4).  That case is open, and the receivership continues.  Although DCEH is under receivership, the Defendants in this action are not included as assets or entities controlled by the Receiver.

According to the Defendants, they are not liable for the $360,000 due and owing to the Plaintiff, because they claim that in January 2019 Studio only acquired the Defendants' assets, but not their liabilities.  Based upon the more than 3,100 pages of documents evidencing that transaction, it is reasonable to infer that the terms of that transaction were at least under negotiation, if not actually agreed, in the weeks, or even months, prior to their date "as of" January 7, 2019.  (Morton Decl., Exh. 5)  Nonetheless, MasterMind never was notified of this contemplated transaction or that the transaction would result in non-payment for its services. Instead, as late as December 10, 2019, Rebecca Adams, the Director of Social Media at DCEH, was (mis)leading MasterMind to believe that their working relationship would continue in 2019.  (Golubock Decl., Exh. H).  Had MasterMind known the truth, it could have commenced this action in December 2018, prior to

the sale to Studio and EPF noted above and discussed below.  Not until January 11, 2019, when Mastermind received an email message from Melissa Esbenshade, former Chief Marketing Officer of DCEH (Golubock Decl., Exh. I), did MasterMind begin suspecting that it might not be paid and that work should not continue.  This apparent practice of accepting services from vendors such as MasterMind, without any apparent plan for payment, was given by Ms. Ebenshade in her email as one reason she resigned from that position on or about January 11, 2019.

On or about January 17, 2019, MasterMind learned that DCEH had been "sold" or was in receivership.  MasterMind stopped providing new services at that time, and commenced this action on February 19, 2019 by filing its Complaint for Damages [Doc. #1].  The Complaint seeks relief set out in four counts.   Count I alleges that the Defendants breached a written agreement between the parties by failing to pay the agreed sums due under that contract.  MasterMind must now withdraw that claim based upon the injunction in the receivership order against asserting claims against DCEH outside the receivership court.  Count II alleges, in the alternative, that, even absent a valid contract claim, the Defendants have been enriched unjustly by accepting from MasterMind valuable services for which the Defendants have not paid.  Count III seeks a judgment, in the alternative, under

"quantum meruit" based upon a contract implied in law that requires the Defendants to pay the reasonable value of MasterMind's services to them. Count IV seeks a judgment for MasterMind's attorney's fees under OCGA §13-6-11.

**1.    There Is No Competent Evidence That The Defendants Own Any Rights In The Instagram and Twitter Accounts.**

It is undisputed that the only express, written contracts governing MasterMind's services to the Defendants were between MasterMind and DCEH. MasterMind provided services that directly benefited the Defendants, however, thus supporting MasterMind's claims based upon unjust enrichment (Complaint, Count II) and quantum meruit (Complaint, Count III). Any "personal property rights" MasterMind created through its performance under that contract presumptively are property of DCEH, absent some competent evidence showing otherwise. DCEH is not a party to this action, as a plaintiff-in-counterclaim or otherwise, because it is in a receivership created by the U. S. District Court for the Northern District of Ohio in *Digital Media Solutions, LLC v. South University of Ohio, LLC* et al., Civil Action File No. 1:19-CV-00145-DAP. A copy of the Order appointing the receiver is attached as Exhibit 4 to the Morton Declaration. Paragraph 10 of that Order states:

All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Property, or its Books and Records or Property, or against the Receiver, in any court. The parties are further stayed from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon the Property owned by or in the possession of the Receivership Entities, or the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceedings or with the exclusive jurisdiction of this Court over the Property, its Books and Records and Property and the said Receiver.

The Order defines the term "Property" as expressly including "general intangibles", such as the account rights in issue. Order, ¶1 on page 4. Because of that Order, Mastermind is prohibited from adding DCEH as a defendant in this action. In addition, if the rights in the Instagram and Twitter accounts are DCEH property, the Defendants are enjoined by that Order from asserting in this action any "claim" upon those rights, or "from causing . . . the issuance out of any court of any writ [or] process . . . for the purpose of enforcing any lien or claim upon" that property.

The sole "evidence" of record on ownership of the subject passwords is found in paragraph 12 of the Declaration of Rebecca Adams (Doc. #30-1).  There Ms. Adams states:

> In January 2019, DCEH sold the AI Defendants to Education Principle Foundation ("EPF").  As part of that larger transaction, DCEH also sold the ownership rights for the AI Defendants' social media accounts to Art Institute International, LLC ("AAI").  AAI, at this same time, entered into a services agreement with Studio Enterprises Manager, LLC ("Studio") under which Studio would, among other things, manage and control the AI Defendants' various social media accounts."

There is no foundation in Ms. Adams' Declaration for these assertions.  She states in paragraph 1 that she has been the social media marketing manager of an unnamed entity or entities since 2010.  She does not testify that she was involved in or participated in the January 2019 transactions, or that she has read any documents supporting her assertion of ownership.  Absent such a foundation, her statement that AAI or Studio own the Instagram and Twitter accounts merely is an inadmissible conclusion, or, if admissible, is entitled to no weight.  "This court has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Brothers Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985).

At least some of the Instagram and Twitter accounts in issue here existed prior to the March 8, 2018 Statement of Work between Mastermind and DCEH.  If those accounts existed prior to the "first" school sale, from the EDMC entities to the Dream Center Foundation entities in October 2017, a threshold issue exists on how those rights were affected by that transaction.   Exhibit 3 to the Morton Declaration filed with this brief is a copy of the Receiver's First Report [Doc. #91] in *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Civil Action File No. 1:19-CV-00145-DAP, U. S. District Court, Northern District of Ohio (the "Receivership Case").[2]   The last six (6) pages of that report is a series of organizational charts titled "The Dream Center Foundation and Subsidiaries".  The report states that DCEH provided that information, which shows the relationship among the DCEH/Dream Foundation entities prior to the commencement of the Receivership.  See Receiver's Report, page 6.

At page 5 of that report, the Receiver states:

Dream Center Education Holdings LLC ("DCEH") is a not for profit holding company. Prior to the appointment of the Receiver, DCEH centralized and provided **operational online services to all of its campuses** out of a 17,000 square foot data center (the "Data Center") located at 615 McMichael Road, Pittsburgh, PA 15205.  . . . DCEH structured itself to provide a wide range

---

[2] At this time, the docket entries in the Receivership Case approach 400 in number, rendering impossible any easy assessment of the effect of that case on the subject account rights.

of managed services for students and employees at campuses including admissions, **marketing**, **communications**, student services (such as online course materials and e-textbooks, **email, student portals**, crisis management services and the like), career services, alumni services, and **computer supported operational support and management** . . . . (emphasis added)

Thus, according to the federal court Receiver, on March 4, 2019, DCEH was the central entity in the "Dream Center" organization for electronic and marketing activity. The terms "Specified Campuses" and the "Excluded Campuses" are designated in Annex 1 to Doc #283-1 in the Receivership Case. Morton Decl., Exh. 6. Annex 1 is a part of the "Amended and Restated Framework Agreement by and among Studio Enterprise Manager, LLC, Dream Center Education Holdings, LLC, Dream Center South University, LLC, Dream Center Argosy University Of California, LLC, Argosy Education Group, LLC, The Arts Institutes International, LLC and the Other Parties Listed On The Signature Pages Hereto Dated As Of January 7, 2019". That Framework Agreement is one of the transaction documents created for the January 2019 divestiture and sale by DCEH to Studio and its affiliated foundation, Education Principle Foundation ("EP Foundation"). This transaction is discussed in more detail *infra*. Using those same definitions, the Receiver reported that "the Specified Campuses did not and do not have their own computer platforms . . . . [E]ven though DCEH received no benefits of ownership . . . in order to operate all of the campuses and make the

Studio Transaction work, DCEH was required to provide support for the Specified Campuses and the Excluded Campuses through its Data Center and administrative staff."  Receiver Report, pages 7-8.  At page 12 of his report, the Receiver further states that he "entered into terse [*stet*] negotiations with Studio and EP Foundation, sued them and settled with them in under two weeks. Key to the settlement is that Studio and EP Foundation will return any assets acquired from the Excluded Campuses . . . ."

The transaction over which the Receiver sued Studio and EP Foundation is described at pages 6 through 8 of his First Report.  That series of transactions is evidenced by the transaction documents Studio was compelled to file in the Receivership case by Court order.  <u>Those transaction documents comprise more than 3,100 pages.</u>  (Morton Decl., Exh. 5).  Divining who or what has rights to the Instagram and Twitter accounts following those transactions is simply beyond the Plaintiff's ability to determine at this time.  But there can be no doubt that the ownership of those rights requires more evidence than the bare assertion by Ms. Adams in paragraph 12 of her declaration.

That Gordian knot is tangled even further by the 50+ Delaware Chapter 7 cases.  The Bankruptcy Trustee in those cases may claim an interest in the Instagram and Twitter accounts used by the Defendants.  There is no indication in

the record in this case that the Bankruptcy Trustee or the Receiver has been notified of this case and this motion, to afford them with notice that their rights may be affected.

From all of the foregoing, it is apparent that the Defendants' bare assertion that they have exclusive rights in the Instagram and Twitter accounts is inadequate, that the rights in those accounts may be in DCEH and therefore the Receiver or in the bankruptcy trustee, or that those rights never were transferred or assigned validly through the chain of transactions described above.  For those reasons, the Court should deny the Defendants' motion for preliminary injunction.

**2.      The Defendants Have Misled The Court On Whether They Have Access To The Instagram and Twitter Accounts.**

In the Defendants' motion and in the Declaration of Rebecca Adams filed to support that motion, the Defendants assert that a preliminary injunction is necessary to prevent irreparable injury caused by their inability to post messages on their Instagram and Twitter accounts.  That assertion is demonstrably false, however.  As shown in detail in paragraphs 4 through 8 and Exhibit A to the Declaration of Andrew Golubock filed with this Brief, the Defendants have been posting to the subject Instagram and Twitter accounts without interruption from January 2019 through the date of filing this Brief.  It therefore is apparent that the Defendants cannot be sustaining any injury caused by the Plaintiff.

-14-

Mr. Golubock testifies that Exhibit A to his declaration shows that, between January 1, 2019 and June 21, 2019, the Defendants posted to their Instagram and Twitter accounts at least 268 times.  The details and copies of those postings are included in that Exhibit A.  Mastermind therefore is puzzled about Ms. Adams' assertions to the contrary, as well as her statements that the Defendants lack the passwords to access those accounts.

**3.    Even If The Defendants Own Some Rights In The Instagram and Twitter Accounts, The Plaintiff Holds A Perfected Lien On Them.**

The Defendants claim in their motion that the rights in the Instagram and Twitter accounts are personal property (as distinct from realty) supporting a claim for conversion, as alleged in Count III of their Counterclaim.  See Defendants' Brief, pages 12 – 15.  The Defendants also claim that they (or their predecessor in interest) "let MasterMind store the passwords to the social media accounts in MasterMind's own software program, known as LastPass."  Adams Declaration, ¶11.  There is no dispute in the record that MasterMind has not been paid the substantial sum of money that was the agreed price for the work its performed, which preserved and enhanced the value of the subject social media accounts.

Based upon those facts, the rights in the Instagram and Twitter accounts, alleged to be in the exclusive possession of MasterMind, were the subject of a bailment under Georgia law.  OCGA §44-12-40 states that "[a] bailment is a

delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust."  OCGA §44-14-409 provides that "[t]he bailee for hire of labor and service shall have a special lien for his labor and services upon the thing bailed until he parts with possession; and, if he delivers up a part of the thing bailed, the lien shall attach to the remainder in his possession for the entire claim under the same contract."

Thus, assuming for the purposes of this motion only that the Defendants' assertions set forth above are true, they merely demonstrate that MasterMind would have a legal right to retain the Defendants "intellectual property" in its possession in order to preserve and maintain its lien thereon.

The concept of bailment of intellectual property and "digital assets" has found favor with at least some legal authorities.

> Entrusting your stuff to others is a bailment.  A bailment is the "delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose." Black's Law Dictionary 169 (10th ed. 2014); J. Story, Commentaries on the Law of Bailments § 2, p. 2 (1832) ("a bailment is a delivery of a thing in trust for some special object or purpose, and upon a contract, expressed or implied, to conform to the object or purpose of the trust"). . . . State courts are busy expounding common law property principles in this area as well. E.g., Ajemian v. Yahoo!, Inc., 478 Mass. 169, 170, 84 N.E.3d 766, 768 (2017) (e-mail account is a "form of property often referred to as a 'digital asset'); Eysoldt v. ProScan Imaging,

-16-

194 Ohio App.3d 630, 638, 2011–Ohio–2359, 957 N.E.2d 780, 786 (2011) (permitting action for conversion of web account as intangible property.)

*Carpenter v. United States*, 138 S. Ct. 2206, 2268-69 and 2270, 201 L. Ed. 2d 507 (2018) (Gorsuch, J., dissenting) (application of Fourth Amendment to cell site location information).

Applying these principles to the Defendants' arguments leaves no doubt that if the account rights the Defendants seek are property, MasterMind holds a perfected security interest or lien in and upon them that it will lose if it delivers them to the Defendants.

## <u>Conclusion</u>

For all of the reasons set forth above, it is apparent that the Defendants are not entitled to the preliminary injunction they seek in their motion. Accordingly, MasterMind respectfully urges the Court to deny the motion.

I hereby certify that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B), N.D.Ga.

Respectfully submitted,

*/s/ James C. Morton*
James C. Morton
Georgia Bar No. 526025

Suite 1350, Two Midtown Plaza
1349 West Peachtree Street
Atlanta, Georgia 30309
(404) 966-5133
(404) 806-2525 (fax)

-17-

jcm-law@comcast.net

/s/ Mathew A. Schuh
Mathew A. Schuh
Georgia Bar No. 630253

Mathew A. Schuh, P.C.
Two Midtown Plaza, Suite 1350
1349 West Peachtree Street
Atlanta, Georgia 30309
(404) 277-8421
matt@schuhpc.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

This is to certify that on this day I filed the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, DECLARATION OF ANDREW GOLUBOCK AND DECLARATION OF JAMES C. MORTON, ESQ.** using the court's CM/ECF system, which will serve a copy on all parties or their counsel of record.

This 24th day of June, 2019.


*/s/ James C. Morton*
James C. Morton
Georgia Bar No. 526025